UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10911-GAO

IN RE MASSACHUSETTS DIET DRUG LITIGATION

MEMORANDUM AND ORDER
September 17, 2004

O'TOOLE, D.J.

I.      **Introduction**

These cases stem from the 1997 removal from the market of the diet drugs fenfluramine (marketed as Pondimin) and dexfenfluramine (marketed as Redux) based on information suggesting a connection between use of the drugs and the development of valvular heart disease ("VHD"). After the diet drugs were removed from the market, thousands of former users brought numerous product liability lawsuits, including approximately one hundred class actions, against American Home Products Corp. In 1997, the Judicial Panel on Multidistrict Litigation established an MDL proceeding in the Eastern District of Pennsylvania and transferred the pending federal diet drug cases. Thousands of additional diet drug cases have since been transferred to the MDL Court as tag-along cases.

In 1999, American Home Products reached a nationwide class action settlement agreement with the plaintiffs, which the MDL Court approved in August 2000. Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.), Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000). The plaintiff class was comprised of approximately six million people in the United States who had used Pondimin and Redux. The settlement agreement created a structure to compensate class members who were

harmed by the diet drugs.  It also provided class members the opportunity to exercise intermediate or back-end opt-out rights in the future, which permitted them to forego the settlement benefits and pursue their claims against American Home Products through the tort system (subject to restrictions). Under the agreement, American Home Products was prohibited from asserting the statute of limitations as a defense to a claim brought pursuant to the downstream opt-out provisions.

In March and April 2004, more than 2,000 former users of the diet drugs, having exercised their opt-out rights, brought 195 cases in the Massachusetts superior court against Wyeth, Inc., the corporate successor to American Home Products.  Wyeth is a Delaware corporation with a principal place of business in New Jersey.  The plaintiffs, most of whom are not Massachusetts residents, also named as defendants Indevus Pharmaceuticals, Inc., a Delaware corporation with a principal place of business in Massachusetts, and Boehringer Ingelheim Pharmaceuticals, Inc., a Delaware corporation with a principal place of business in Connecticut.  Indevus was involved in the development and marketing of Redux, and Boehringer was involved in its production.  Indevus and Boehringer were not parties to the settlement agreement.

Wyeth has removed the 195 cases to this Court, arguing that the plaintiffs fraudulently joined Indevus as a defendant to defeat federal diversity jurisdiction.[1]  Wyeth's theory is that Indevus, a Massachusetts citizen for jurisdictional and removal purposes, should be disregarded as a party because the plaintiffs cannot, as a matter of law, assert any valid claims against Indevus.  Specifically,

---

[1]     Each of the 195 cases has been removed separately and assigned a unique docket number in this Court.  On July 13, 2004, I ordered that the cases collectively should be referred to using the caption, "In re Massachusetts Diet Drug Litigation" and that all documents filed in Andrus, et al. v. Wyeth, et al., Civil Action No. 04-10911 – the first case docketed here – shall be deemed filed in each of the related diet drug cases.  Accordingly, this Memorandum and Order shall apply to each of the 195 diet drug cases that Wyeth has removed to this Court, as identified in Appendix A.

Wyeth urges that any claims by the plaintiffs against Indevus are necessarily time-barred under Massachusetts law.[2]  The plaintiffs have moved to remand the cases to the Massachusetts court. They argue that Indevus is a proper defendant, and that the removal of the cases was improper under 28 U.S.C. § 1441(b).[3]

II.    **Discussion**

    A.    **Wyeth's motion to stay**

There is one matter that must be resolved before the jurisdictional issue is addressed.  Wyeth has moved to stay proceedings in these cases pending transfer to the MDL Court, arguing that the MDL Court, because of its jurisdiction over and experience with the class action diet drug cases, is in a better position to address the legal and factual issues presented by the plaintiffs' motions to remand.  Wyeth's arguments are unconvincing, and its motion to stay shall be denied.

The Judicial Panel on Multidistrict Litigation ("JPML") has entered conditional transfer orders indicating that, pursuant to 28 U.S.C. § 1407, these cases are to be transferred to the MDL Court in the Eastern District of Pennsylvania.  See Conditional Transfer Order 126, dated Aug. 10, 2004, and Conditional Transfer Order 127, dated Aug. 17, 2004.  However, the plaintiffs have objected to the transfer orders, and the transfer orders have been stayed until the issue is briefed and heard by the JPML.

---

[2]    Unlike Wyeth, Indevus was not a party to the class action settlement agreement and is not barred by that agreement from asserting the statute of limitations as a defense against claims concerning the diet drugs.

[3]    In its notices of removal, Wyeth asserted two additional bases for removal: that Boehringer was fraudulently joined as a defendant and that the claims of certain plaintiffs were misjoined.  The parties have not briefed these issues; therefore, I have not addressed them.

JPML Rule 1.5 provides that "[t]he pendency of a . . . conditional transfer order . . . does not affect or suspend orders or pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."  In a standard letter to this Court dated August 25, 2004, the JPML, citing Rule 1.5, advised:

> Thus your jurisdiction continues until any transfer ruling becomes effective.  If you have a motion pending before you in any of the actions – particularly a motion to remand to state court (if the action was removed to your court) – you are encouraged to rule on the motion unless you conclude that the motion raises issues likely to arise in other actions in the transferee court, should we order transfer, and would best be decided there.

For a number of reasons, I find that it is proper and efficient to rule on the pending motions to remand rather than wait for the JPML to decide whether to transfer the cases to the MDL Court. The primary issue presented by the motions to remand requires consideration of the Massachusetts statute of limitations and its qualifying "discovery rule" – an issue as to which the MDL Court, respectfully, has no superior experience or expertise.  Further, it does not appear that the issue, involving as it does Massachusetts law, is one that is likely to arise in other diet drug litigation in other courts.  I am also not persuaded by Wyeth's arguments that resolution of the motions to remand implicates issues that are within the exclusive jurisdiction of the MDL Court, such as interpretation of the settlement agreement; as indicated below, the motions to remand can be resolved without encroaching on the exclusive territory of the MDL Court.  Accordingly, I, like several other federal district courts confronted with motions to stay and to remand, will deny Wyeth's motion to stay and address the merits of the plaintiffs' motions to remand.  See, e.g., Collett v. Freid, Civ. Action No. 03-526 (E.D. Ky. July 15, 2004) (denying Wyeth's motion to stay and plaintiff's motion to remand); Bejarano v. Wyeth, Civ. Action No. L-03-53 (S.D. Tex. June 27, 2003) (same).

B.    **The plaintiffs' motions to remand**

1.    **Fraudulent joinder standard**

Section 1441(a) of Title 28 of the United States Code permits a defendant in a state court action to remove the action to the federal court in the state in which it was filed if the federal court would have original jurisdiction over the case.  Section 1441(b) provides, however, that if the basis for removal is diversity of citizenship jurisdiction, then removal is not permitted if any properly joined defendant is a citizen of the state in which the action was originally brought.  Here, Indevus is a citizen of Massachusetts, where it has its principal place of business.  Nevertheless, Wyeth has removed the cases, asserting that the plaintiffs fraudulently joined Indevus as a defendant in order to defeat removal.

The First Circuit has written little about the doctrine of fraudulent joinder and has not set forth a standard for applying it.  In re New England Mut. Life Ins. Co. Sales Practice Litig., 324 F. Supp.2d 288, 297-98 (D. Mass. 2004).  The Supreme Court and other circuit courts have provided some guidance on the issue, and Judge Saris of this District recently reviewed and summarized some of those decisions.  See Mills v. Allegiance Healthcare Corp., 178 F. Supp.2d 1, 4-6 (D. Mass. 2001). I will apply the doctrine as Judge Saris persuasively framed it.

A defendant who seeks to remove a case from the state court, asserting fraudulent joinder of a defendant, has the burden to prove by clear and convincing evidence either that there has been an outright fraud committed in the plaintiff's pleadings or that there is no reasonable basis in law and fact for the plaintiff's claim against the putative fraudulently joined defendant.  Id.  "A mere theoretical possibility of recovery under state law does not suffice to preclude removal."  Id. at 5.

Rather, "[t]he linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." Id. at 4. "So long as the plaintiffs have an objectively valid basis for joining [the defendant] in the complaint, their subjective motivations are largely irrelevant." Id. at 6.

To determine whether a party has been fraudulently joined to defeat diversity jurisdiction, a court starts with the parties' pleadings but may also consider summary judgment type evidence, such as affidavits, transcripts, and exhibits. Id. at 5-6. All fact and legal ambiguities must be resolved in the plaintiff's favor. Id. at 6. Further, the removal and diversity jurisdiction statutes should be strictly construed against federal jurisdiction to avoid infringing the rights of state courts to determine matters of state law. See City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 76 (1941); Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). Any doubts concerning the court's jurisdiction should be resolved against removal and in favor of remand to the state court. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

Under this standard, it is not my responsibility at this stage to forecast the plaintiffs' likelihood of success on their claims against Indevus, for the inquiry is not whether the plaintiffs have winning claims. Fabiano Shoe Co. v. Black Diamond Equip., Ltd., 41 F. Supp.2d 70, 72 (D. Mass. 1999). Instead, I must determine whether there is an objectively reasonable basis for the claims; if so, then federal jurisdiction is lacking and the state court should be permitted to hear the claims.

2.    **Statutes of limitations**

In a nutshell, Wyeth argues that the plaintiffs' claims against Indevus are so clearly barred by the applicable statutes of limitations that Indevus should be disregarded as a party defendant, thus negating the § 1441(b) obstacle to removal.

Under Massachusetts law, a three-year statute of limitations applies to the plaintiffs' tort-based product liability claims, such as defective design, failure to warn, negligence, and fraudulent and negligent misrepresentation.  See Mass. Gen. Laws ch. 260, § 2A; id. ch. 106, § 2-318.  A four-year statute of limitations applies to plaintiffs' claims under Chapter 93A, the Massachusetts Consumer Protection Act.  See id. ch. 260, § 5A.  The plaintiffs, therefore, were required to bring their claims within three or four years, as applicable, of when their causes of action accrued, unless the limitations periods were tolled.

a.    **Discovery rule**

Like other jurisdictions, Massachusetts recognizes a "discovery rule" corollary to its statutory limitations on the timely commencement of actions.  Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 740-41 (Mass. 1990).  Under the discovery rule, the running of the statute of limitations is tolled until the plaintiff knows or reasonably should know that he may have been tortiously harmed by a defendant's conduct.  Bowen, 557 N.E.2d at 740-42; see also Olsen v. Bell Tel. Labs., Inc., 445 N.E.2d 609, 611-12 (Mass. 1983).  The Massachusetts discovery rule has been found to apply to product liability claims such as those brought here.  See, e.g., Bowen, 557 N.E.2d at 740-42 (applying discovery rule to product liability claims stemming from ingestion of prescription drug); see also Olsen, 445 N.E.2d at 611-13 (applying discovery rule in product liability action stemming from work-place exposure to chemicals).

A plaintiff need not know the full extent or the cause of his injury. Riley v. Presnell, 565 N.E.2d 780, 784 (Mass. 1991) ("One need not apprehend the full extent or nature of an injury in order for a cause of action to accrue."); Bowen, 557 N.E.2d at 741 (the discovery rule "does not require that the plaintiff know or have reason to know that the defendant violated a legal duty to the plaintiff, but only that she knew or had reason to know that she had been harmed"). See also Olsen, 445 N.E.2d at 612 ("If knowledge of the extent of injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed."). Instead, "[w]here injury is present but not discernible, or an injury is recognized but its cause is not ascertainable, accrual of the cause of action is held to be in abeyance until the time when a modicum of knowledge supplants ignorance in the mind of the claimant, or may be reasonably imputed to her." Lijoi v. Mass. Bay Transp. Auth., 548 N.E.2d 893, 895 (Mass. App. Ct. 1990); see also Bowen, 557 N.E.2d at 741 ("the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury").

The discovery rule also does not excuse willful ignorance; it holds a plaintiff accountable for what reasonable inquiry would have revealed. Bowen, 557 N.E.2d at 743 ("Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations."). "[T]he discovery rule, while affording some protection to a plaintiff, also imposes on him an obligation to investigate the cause of his injury." Zamboni v. Aladan Corp., 304 F. Supp.2d 218, 224 (D. Mass. 2004). Accordingly, actual knowledge of an injury and cause of the harm is not required to trigger the statute of limitations; knowledge may be imputed to a plaintiff, or a plaintiff may be charged with constructive knowledge.

An objective standard is applied to measure what a plaintiff should have known, according to what a reasonable person in the plaintiff's position, exercising reasonable diligence in pursuance of the duty to inquire into his injury, would have known. <u>Bowen</u>, 557 N.E.2d at 742 (reviewing "summary judgment record to see whether a reasonable person in the position of the plaintiff would have been on notice" of the cause of her injury); <u>Riley</u>, 565 N.E.2d at 785 ("Individual variations in judgment, intellect, or psychological health which are unrelated to the complained-of conduct are not considered. Only if a reasonable person in the plaintiff's position would have been able to discern the harm or cause of the harm will the cause of action accrue and the limitations period begin to run."). "In determining whether a party has sufficient notice of causation, our inquiry is whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiff's position should have discovered the cause of his or her injuries." <u>McGuinness v. Cotter</u>, 591 N.E.2d 659, 666 (Mass. 1992).

"[T]he question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact." <u>Riley</u>, 565 N.E.2d at 783. That the issue presents a question of fact, however, does not bar me from finding fraudulent joinder at this stage if the pleadings and record, viewed in the light most favorable to the plaintiff, reveal that there is no reasonable basis in law or fact for believing the plaintiffs' actions to be timely.

b.    **Application of the discovery rule**

The plaintiffs are all former users of the diet drugs Redux and Pondimin, which were removed from the market in September 1997. Wyeth argues that the statutes of limitations began to run on the plaintiffs' claims at that time because any injury the plaintiffs sustained as a result of using the diet drugs would have been detectable shortly after the time of their use (which had to have been before

September 1997), and because the wide-spread publicity surrounding the withdrawal of the diet drugs from the market put persons who had been using the drugs, including the plaintiffs, on inquiry notice as to any injuries they may have suffered and any legal claims that might consequently have arisen.

As to its first argument, i.e., that any injury was detectable prior to or shortly after September 1997, Wyeth relies on the findings of the MDL Court at the time it approved the settlement agreement. The MDL Court found that there was no latency period between the use of the diet drugs and the development of valvular heart disease, and consequently any injury that use of the diet drugs may have caused was detectable shortly after their use:

> The clinical and epidemiological studies demonstrate – and all the experts agree – that insofar as the use of fenfluramine or dexfenfluramine results in an increased prevalence of valvular regurgitation, that regurgitation is detectable by echocardiogram shortly after the patients discontinue use of diet drugs. Conversely, there is no evidence that the use of the drugs results in any increased risk of regurgitation that is "latent" and not detectable by today's sophisticated echocardiographic technology.

Brown, 2000 WL 1222042 at *46.

Wyeth argues that this finding is binding on the plaintiffs because, as class members, they are barred by judicial and collateral estoppel from re-litigating the issue of latency. The plaintiffs argue that the issue of latency is irrelevant: "the inquiry under the Massachusetts discovery rule is not when the injury occurred, but rather when the injury could reasonably have been discovered by the plaintiff. Wyeth's contention that VHD is not a latent injury simply has no bearing on that inquiry." Plaintiffs' Mem. Supp. Mot. to Remand at 9. Although they do not explicitly say so, this argument suggests that the plaintiffs are not arguing that they did not develop their injuries until after September 1997 but only that they could not or should not have discovered them until later. As to this latter argument, I agree with the plaintiffs that the issue of latency is irrelevant here. In other words, if it

10

is assumed that the harm caused by the diet drugs was not latent, so that the plaintiffs' injuries, if any, were present by September 1997, nevertheless the relevant question for present purposes is when the plaintiffs should have discovered the harm.

As to that central question, Wyeth argues that the plaintiffs were on inquiry notice and should have discovered their injuries because of the extensive publicity surrounding the withdrawal of the diet drugs from the market. According to Wyeth, beginning in September 1997 the mass media was flooded with an overwhelming amount of information linking the diet drugs to valvular heart disease, indicating that even users who were experiencing no symptoms may have been injured, and suggesting that all users seek medical attention. For example, Wyeth issued a press release, purchased advertisements in many national and regional newspapers, and sent information to approximately 450,000 doctors and pharmacists. The Food and Drug Administration also issued a press release, and the information was reported on morning and evening television news programs and front pages of newspapers throughout the country.

Wyeth contends that the publicity in and around September 1997 was so extensive that no reasonable user of diet drugs could have missed it, or to put it differently, the plaintiffs should be charged with constructive knowledge of the publicity. Further, had the plaintiffs heeded the message of that publicity, they would have sought medical attention, obtained an echocardiogram, and learned of any injury that was present. See Brown, 2000 WL 1222042 at *18 ("Pondimin and Redux were withdrawn from the market in September 1997 accompanied by an unprecedented amount of publicity which effectively warned diet drug users that they may have developed valvular lesions which could be detected through non-invasive echocardiograms.").

Wyeth alternatively argues that the subsequent extensive publicity, between October 1999 and February 2000, concerning the class action settlement agreement was sufficient to put diet drug users on notice of the need to seek medical attention and thus trigger the running of the statute of limitations. During that time, the parties to the settlement agreement, with the approval of the MDL Court, implemented a highly sophisticated, elaborate, and extensive notice program "designed to make class members aware of the potential risks posed by Pondimin and Redux, of the legal rights arising from the use of those drugs, of the proposed nationwide class action settlement which would resolve such claims and of their opportunity to opt out or object to the Settlement." Brown, 2000 WL 1222042 at *35. The MDL Court described the scope and content of the publicity, id. at *35-*38, and concluded that it was "highly successful" at reaching and educating the targeted class members. Id. at *36. Wyeth further contends that the extensive publicity unambiguously advised all users to obtain an echocardiogram, which would reveal any harm caused by the diet drugs. Thus, Wyeth argues that the statute of limitations began to run at the very latest by February 2000, and the plaintiffs' claims against Indevus are barred because they were brought more than four years later, in March and April 2004.

The plaintiffs allege that they did not learn of their injuries until they had echocardiograms in 2001 or 2002, within three years of their filing their claims, and they argue that they could not and should not have discovered their injuries any sooner. They allege that, after the diet drugs were removed from the market in 1997, they acted diligently, sought medical care, and followed the advice of their doctors, but their injuries remained asymptomatic and undiscovered until echocardiograms were performed in 2001 or 2002. They deny having knowledge of the need for echocardiograms any

sooner and argue that the publicity in 1997, 1999, and 2000 was insufficient to put them on notice of the need for that procedure.

The parties' competing arguments concerning the application of the discovery rule to the facts of the plaintiffs' claims raise at least two material disputed questions of fact. First, to what extent should knowledge of the wide-spread publicity be imputed to a plaintiff in the absence of evidence of actual notice to that plaintiff?[4] And, second, was the content of the publicity sufficient to put a plaintiff on notice that undergoing an echocardiogram would provide an answer to the question whether she had been harmed by any diet drugs she had taken? For present purposes, my role is not to act as a fact-finder and conclusively resolve these disputed issues. Rather, in considering the pending motions to remand and Wyeth's fraudulent joinder argument, I must determine whether there is any reasonable basis, on the record before me, for the plaintiffs' contention that the discovery rule operated to toll the statute of limitations sufficiently so that their various actions could be considered timely under Massachusetts law.[5] I conclude that there is a reasonable basis for the plaintiffs'

---

[4] Wyeth does not present evidence of actual notice; its argument is that the notoriety of the diet drug class action and related matters was such that all plaintiffs should be charged with notice.

[5] I note that a justice of the Massachusetts Superior Court recently denied Indevus's motion for summary judgment on the issue whether the Massachusetts discovery rule tolled the statutes of limitations on claims brought by four diet drug users (who are not parties here) against Indevus, concluding that there was a trial-worthy issue of fact as to when the plaintiffs, exercising reasonable diligence, should have discovered their claims. See Sawyer v. Indevus Pharms., Inc., No. 03-5028-B, 2004 WL 1739405 (Mass. Super. Ct. July 26, 2004). While that decision may be instructive, I am not bound to follow it. See, e.g., Comm'r of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967) ("in diversity cases this Court has further held that while the decrees of 'lower state courts' should be 'attributed some weight . . . the decision (is) not controlling . . .' where the highest court of the State has not spoken on the point.") (alterations in original) (citations omitted). Therefore, I must make an independent determination of the issue presented here.

argument, and consequently conclude that Wyeth has not shown that Indevus was fraudulently joined as a defendant.[6]

To resolve the dispute over whether any or all of the plaintiffs should be charged with constructive knowledge of the need for an echocardiogram, a fact-finder would need to determine whether the publicity was sufficient to put a reasonable diet drug user in each plaintiff's position on notice of the need for an echocardiogram. See McGuinness, 591 N.E.2d at 666. That determination will necessarily depend on the circumstances pertaining to each plaintiff, such as where he lived and what media coverage there was in that location. In addition, the fact-finder will need to consider the content of the publicity to which a reasonable diet drug user would have been exposed in any particular locality. It may be that individuals in some locations were put on notice of the need for an echocardiogram while others, in different locations, were not. These issues have not been litigated as to these plaintiffs, and they should be resolved only upon a completely developed summary judgment record or at trial, if one is warranted.

Decisions from other courts dealing with similar issues confirm the conclusion that a clear answer in Wyeth's favor is not possible at this stage. For example, in Cascone v. United States, 370 F.3d 95 (1st Cir. 2004), the First Circuit considered whether the discovery rule saved the plaintiff's wrongful death action under the Federal Tort Claims Act when the claim was brought after the statutory limitations period had passed. In Cascone, the plaintiff's husband died at a veterans hospital operated by the federal government in Northampton, Massachusetts. Shortly after the patient's death, a nurse at the hospital, Kristen Gilbert, was indicted for the death of certain patients, but not the death

---

[6]    Because I have resolved this issue in the plaintiffs' favor, I need not address other arguments the plaintiffs have advanced, such as whether the doctrine of class action tolling applies to their claims against Indevus.

of the plaintiff's husband.    Gilbert's indictment received extensive publicity throughout Massachusetts.  Eventually, the plaintiff's husband's death was linked to Gilbert, and the plaintiff filed her claim under the FTCA.  The government moved to dismiss the claim as barred by the statute of limitations, and the plaintiff argued that the discovery rule tolled the statute of limitations.

The First Circuit considered whether there had been sufficient publicity to put the plaintiff on notice that her husband's death may have occurred under suspicious circumstances and concluded that there was not, permitting the action to continue.  In reaching its conclusion, the Court engaged in a fact-intensive inquiry concerning the nature and extent of the publicity and the characteristics of the plaintiff.  The Court explained:

> Whether a plaintiff should, in the exercise of reasonable diligence, have discovered necessary facts is an objective inquiry.  Nonetheless, the particular circumstances of individual plaintiffs can be relevant to the outcome.  The issue is whether a reasonable person *similarly* situated to the plaintiff would have known the necessary facts.  Where the plaintiff resides can be a factor when information about the underlying facts is limited to certain geographic areas.  This is often true, for example, when notice is based on local television or press reports.  How often a plaintiff communicates with other family members who have access to more information can also be relevant.

Id. at 104 (citations omitted)(emphasis in original).  To reach its conclusion that the district court improperly granted summary judgment in the government's favor, the Court "examine[d] several factors: the geographical scope of the coverage vis-a-vis the family members, the content of the stories, and the degree of press and media saturation."  Id. at 99.

The Ninth Circuit has also addressed several cases concerning the extent to which knowledge of wide-spread publicity should be imputed to plaintiffs for purposes of applying the discovery rule.  In O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139 (9th Cir. 2002), the Court found that the district court improperly granted summary judgment in favor of the defendants as to whether publicity was

sufficient to put the plaintiffs on notice of a connection between their illnesses and releases from the defendants' nuclear and rocket testing facilities. In reaching that conclusion, the Court found that the determination of what the plaintiffs should have known

> required a fact-intensive examination of the geographic scope of the circulation of various publications, the level of saturation of each publication within the relevant communities, the frequency with which articles on the Rocketdyne facilities appeared in each publication, the prominence of those articles within the publication, and the likelihood that a reasonable person living in Plaintiffs' various communities at the same time as Plaintiffs would have read such articles. These are all factual questions unsuitable for summary judgment.

Id. at 1152-53 (citation omitted); see also Bibeau v. Pac. Northwest Research Found. Inc., 188 F.3d 1105, 1110 (9th Cir. 1999) (reversing summary judgment because whether "litany of news reports and other public relations" were sufficient to put plaintiff on inquiry notice of cause of injuries was question of fact for jury to resolve based on consideration of, for example, plaintiff's exposure to reports and education level); Sanborn v. United States (In re Swine Flu Prods. Liab. Litig.), 764 F.2d 637 (9th Cir. 1985) (reversing summary judgment because jury must determine whether publicity and general community awareness were sufficient to support finding that plaintiff should have known of cause of wife's death).

It is also true that a number of courts have come out the other way and affirmed summary judgment in a defendant's favor based on findings that publicity was sufficiently wide-spread to put a plaintiff on notice of the cause of his injury. See, e.g., Ball v. Union Carbide Corp., 376 F.3d 554, 563-64 (6th Cir. 2004) (finding that local and national media coverage were sufficient to put plaintiffs on notice of the connection between the defendants' conduct and their injuries); Hughes v. Vanderbilt Univ., 215 F.3d 543, 548 (6th Cir. 2000) (finding that "publicity was sufficient to charge Hughes with constructive knowledge of the events underlying her cause of action"); Winters v. Diamond

Shamrock Chem. Co., 149 F.3d 387, 403-04 (5th Cir. 1998) (finding extensive media publicity should have put plaintiff on inquiry notice of possible connection between her cancer and exposure to Agent Orange).

However, all the cases just discussed, whether affirming or reversing summary judgment, agree that the determination whether publicity is sufficient to put a plaintiff on notice and trigger the statute of limitations requires a fact-intensive inquiry into the pervasiveness and content of the publicity and the particular circumstances of the relevant plaintiff(s). While that determination can be made on summary judgment in some cases, it is the circumstances of each case that govern the outcome.

Further, the MDL Court's finding that the scope and pervasiveness of the publicity were sufficient to put class members on notice of the class action settlement is neither binding nor persuasive as to the issue presented here. See Brown, 2000 WL 1222042 at *35-*38 (describing elaborate and extensive notice plan and finding it "highly successful"). The settlement of a Rule 23(b)(3) class action is binding on all class members as to matters within the action, and due process requires that adequate notice be given to class members. See 7B Charles Alan Wright et al., Federal Practice and Procedure § 1786 (2d ed. 1986). Neither Rule 23 nor due process, however, requires that each class member receive actual notice; the parties are required only to provide "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2); see also In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 231-32 (D.N.J. 1997) (citing cases to support conclusion that "[c]ourts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties"). Something less than actual notice to all class members is tolerated in order to strike a

balance between the due process concerns and the need for a mechanism, i.e., the class action, to efficiently litigate certain cases involving numerous parties.  See Wright, supra at 17.

Accordingly, in its decision in Brown, the MDL Court was concerned with whether notice was adequate to satisfy Rule 23 and due process requirements.  It found the requirements satisfied because the parties had provided the "best notice practicable under the circumstances."  Its conclusion also was influenced in part by provisions of the settlement agreement that afforded protections to absent class members who might miss their opportunity to object or opt out prior to approval of the settlement agreement.  For example, the Court found that, in addition to the adequacy of notice, due process concerns were satisfied because the settlement agreement afforded absent class members the opportunity to opt out even after the settlement agreement had been approved, and Wyeth had agreed to waive any statute of limitations defense on claims brought pursuant to the opt-out provisions.  Brown, 2000 WL 1222042 at *39.

The key point is that what notice concerning matters affecting class litigation is sufficient to bind class members to the outcome of the case, a question of federal law, and what notice of possible injury and responsibility for that injury is sufficient to start the limitations clock ticking, a question of state law, are two separate questions to which the answer need not be the same.  If the question here was whether the plaintiffs' claims were barred by a ruling in the class action, the MDL Court's approval of the class notice would establish that the class members had adequate notice.  But that is not the question.  The widespread notice required by the MDL Court is, of course, a factor (among others) to be considered in assessing whether any plaintiff was sufficiently on notice of a possible claim that the discovery rule would no longer suspend the running of the limitations period.  It does not by itself determine the answer.

I recognize that the MDL Court and other federal district courts have been confronted with issues similar to those presented here and reached the conclusion that claims against other defendants (not Indevus) were barred by the applicable statutes of limitations because the publicity and class notice put class members on notice of their injuries. However, I am neither compelled nor persuaded to follow those decisions. They were presumably decided on the facts particular to those cases. So must these cases be decided on their own facts. Any interest in uniformity or efficiency that would otherwise be advanced by deferring to the MDL (and other courts that have previously considered similar issues) must yield to statutory limitations on federal jurisdiction.

III.    **Conclusion**

As set forth above, I conclude that Wyeth has failed to establish that there is no reasonable basis for the plaintiffs' claims against Indevus, and therefore, I conclude that Indevus was not fraudulently joined as a defendant. Accordingly, Wyeth's motion to stay is denied, and the plaintiffs' several motions to remand are granted.

The cases are to be remanded to the state court.

It is SO ORDERED.


September 17, 2004                          \s\ George A. O'Toole, Jr.
DATE                                        DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10911-GAO

IN RE MASSACHUSETTS DIET DRUG LITIGATION

APPENDIX A

The accompanying Memorandum and Order on Wyeth's motion to stay and the plaintiffs'

motions to remand shall apply in each of the following cases:

1.    Andrus et al. v. Indevus Pharmaceuticals, Inc. et al., 04-10911-GAO

2.    Walker v. Indevus Pharmaceuticals, Inc. et al., 04-11034-GAO

3.    Perkins et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11035-GAO

4.    Jauregui-Ruiz et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11036-GAO

5.    Carver et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11037-GAO

6.    Anderson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11038-GAO

7.    Amadeo et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11039-GAO

8.    Laird v. Indevus Pharmaceuticals, Inc. et al., 04-11040-GAO

9.    Beane et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11041-GAO

10.   Kajkowski et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11042-GAO

11.   Antuono et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11043-GAO

12.   Carothers et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11051-GAO

13.   Daily et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11052-GAO

14.   Alkire et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11053-GAO

15.   Ellis et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11054-GAO

16.    Cedeno et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11055-GAO

17.    Asbelle et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11056-GAO

18.    Erick et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11057-GAO

19.    Saluzzo et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11058-GAO

20.    Miller et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11059-GAO

21.    Britton et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11060-GAO

22.    Balistreri et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11061-GAO

23.    DaCasta et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11062-GAO

24.    Armstrong et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11063-GAO

25.    Aguilar et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11064-GAO

26.    Colerick et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11065-GAO

27.    Atherton et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11066-GAO

28.    Fuller et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11067-GAO

29.    Strong et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11068-GAO

30.    Apperson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11078-GAO

31.    Anderson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11081-GAO

32.    Alexander et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11082-GAO

33.    Chalkline et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11083-GAO

34.    Hauk et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11084-GAO

35.    Miller et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11085-GAO

36.    Cole et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11086-GAO

37.    Hunt et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11087-GAO

38.   Adams et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11088-GAO

39.   Taylor et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11089-GAO

40.   Jenkins et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11090-GAO

41.   Arrowood et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11091-GAO

42.   Black et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11092-GAO

43.   Ambroz et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11093-GAO

44.   Ewing et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11094-GAO

45.   Dacus et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11095-GAO

46.   Armstrong et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11096-GAO

47.   Crouch et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11097-GAO

48.   Carr et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11098-GAO

49.   Jones et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11099-GAO

50.   Ellingson v. Indevus Pharmaceuticals, Inc. et al., 04-11104-GAO

51.   Bennett et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11105-GAO

52.   Ausevich et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11106-GAO

53.   Suber et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11138-GAO

54.   Symonds et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11139-GAO

55.   Dumond et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11140-GAO

56.   Meidinger et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11141-GAO

57.   Badger et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11142-GAO

58.   Rhone et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11143-GAO

59.   Clayton et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11144-GAO

60.   Hansen et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11145-GAO

61.   Wright et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11146-GAO

62.   Sosa et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11147-GAO

63.   Hill et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11154-GAO

64.   Spencer et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11155-GAO

65.   Kozma et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11156-GAO

66.   Krishnappa et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11157-GAO

67.   Roberts et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11158-GAO

68.   Burgess et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11159-GAO

69.   Fletcher et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11160-GAO

70.   Bishop et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11161-GAO

71.   Ault et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11162-GAO

72.   Benton et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11163-GAO

73.   Alden et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11176-GAO

74.   Chance et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11177-GAO

75.   Harrelson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11178-GAO

76.   Bailey et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11179-GAO

77.   Luckritz et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11180-GAO

78.   Kline et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11181-GAO

79.   Anderson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11182-GAO

80.   Dolliver et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11183-GAO

81.   Hitchcock et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11184-GAO

82.  Cline et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11185-GAO

83.  Arnold et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11186-GAO

84.  Bischof et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11187-GAO

85.  Bartholomew et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11188-GAO

86.  Becker et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11189-GAO

87.  Barefoot et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11198-GAO

88.  Cowell et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11199-GAO

89.  Richard et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11200-GAO

90.  Sylvester et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11201-GAO

91.  Cockrell et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11202-GAO

92.  Duffy et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11203-GAO

93.  Knott et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11204-GAO

94.  Malone et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11205-GAO

95.  Perschall et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11206-GAO

96.  Brown et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11207-GAO

97.  Bennett et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11208-GAO

98.  Netherland et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11209-GAO

99.  Burton et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11210-GAO

100.  Barry et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11211-GAO

101.  Watson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11224-GAO

102.  Truxillo et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11225-GAO

103.  Walker et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11226-GAO

104.    Antoniou et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11227-GAO

105.    Stewart v. Indevus Pharmaceuticals, Inc. et al., 04-11228-GAO

106.    Pardue v. Indevus Pharmaceuticals, Inc. et al., 04-11229-GAO

107.    Rome et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11230-GAO

108.    Morris et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11231-GAO

109.    Gilmore et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11232-GAO

110.    Badeaux et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11233-GAO

111.    Wirkkala et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11244-GAO

112.    Baker et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11245-GAO

113.    Reital et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11246-GAO

114.    Beznaiguia et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11247-GAO

115.    Bowman et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11249-GAO

116.    Hill et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11250-GAO

117.    Ford et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11251-GAO

118.    Henry et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11252-GAO

119.    Green et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11253-GAO

120.    Irving et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11254-GAO

121.    Mikel et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11255-GAO

122.    Anderson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11256-GAO

123.    Simmons et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11257-GAO

124.    Calkins et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11260-GAO

125.    Lane et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11261-GAO

126.    Franklin et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11262-GAO

127.    Alvarado et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11264-GAO

128.    Ross et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11265-GAO

129.    Horton et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11266-GAO

130.    Barlow et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11267-GAO

131.    Collins et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11268-GAO

132.    Boomhower et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11269-GAO

133.    Althen et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11270-GAO

134.    Reed et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11280-GAO

135.    Medlock et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11281-GAO

136.    Gulledge-Smith et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11282-GAO

137.    Adams et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11283-GAO

138.    Simoneaux et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11284-GAO

139.    Blackenship et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11285-GAO

140.    Daigle et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11286-GAO

141.    Hoffman et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11287-GAO

142.    Akehurst et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11288-GAO

143.    Campbell et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11289-GAO

144.    Allen et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11298-GAO

145.    Jones et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11299-GAO

146.    Kim et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11302-GAO

147.    Soignet et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11303-GAO

148. Amidon et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11304-GAO

149. Cosey et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11305-GAO

150. Bougeois et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11306-GAO

151. Fiore et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11307-GAO

152. Jefferson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11308-GAO

153. Rhudy et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11309-GAO

154. Aroca et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11319-GAO

155. Brandenburg et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11320-GAO

156. Banfield et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11321-GAO

157. Wellington et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11322-GAO

158. Munster et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11323-GAO

159. Alderson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11324-GAO

160. Boyd-Taylor et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11325-GAO

161. Bouche et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11326-GAO

162. Hampel v. Indevus Pharmaceuticals, Inc. et al., 04-11327-GAO

163. Putnam et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11328-GAO

164. Williams et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11342-GAO

165. Tyson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11343-GAO

166. Anderson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11344-GAO

167. Campbell et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11345-GAO

168. Anderberg et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11346-GAO

169. Ellis et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11347-GAO

170.   Datcher et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11348-GAO

171.   Capers et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11350-GAO

172.   Fowler et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11351-GAO

173.   Allen-Dixon et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11352-GAO

174.   Barber et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11353-GAO

175.   Vermillion et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11365-GAO

176.   Adeleke et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11366-GAO

177.   Kramer et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11367-GAO

178.   Jeffries et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11368-GAO

179.   Farnsworth et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11369-GAO

180.   Omenebelle et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11370-GAO

181.   Phipps et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11371-GAO

182.   Stubbs et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11372-GAO

183.   Cressionnie et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11373-GAO

184.   Dukes et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11374-GAO

185.   Mullany v. Indevus Pharmaceuticals, Inc. et al., 04-11375-GAO

186.   Mileo et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11386-GAO

187.   Jones et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11387-GAO

188.   Garvin et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11388-GAO

189.   Clark et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11389-GAO

190.   Russell et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11390-GAO

191.   Johnson et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11427-GAO

192.   Malzahn et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11428-GAO

193.   Willette et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11429-GAO

194.   Garcia v. Indevus Pharmaceuticals, Inc. et al., 04-11543-GAO

195.   Abraham et al. v. Indevus Pharmaceuticals, Inc. et al., 04-11714-GAO